RECEIVED
IN ALEXANDRIA, LA.
AUG 3 1 2012
TONY R. MOORE, CLERK
BY_____
       DEPUTY

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
ALEXANDRIA DIVISION

BERTHA M. HAMILTON

DOCKET NO. 1:10-cv-00664

VERSUS

JUDGE DEE D. DRELL
MAGISTRATE JUDGE JAMES D. KIRK

SHIVANI NEGI, ET AL.

## REPORT AND RECOMMENDATION

Before the court is a motion to dismiss (Doc. 87) filed by defendants, Dr. Shivani Negi (Negi), Dr. Hollis Reed (Reed), Barbara Watkins (Watkins) and the United States of America (USA), on March 14, 2012 and June 5, 2012. The motion was referred to the undersigned by the district judge for Report and Recommendation.

### Factual Background

On April 20, 2010, Bertha Hamilton (Hamilton) and several other *pro se* plaintiffs filed a lawsuit against defendants alleging violation of their constitutional rights and seeking monetary damages (Doc. 1). Specifically, they alleged that a conspiracy existed between the three defendants to cover up alleged maltreatment of patients at the Veteran's Affairs Hospital by Dr. Negi.

With respect to this case, Hamilton alleged that Dr. Negi improperly and prematurely extubated and transferred Floyd Hamilton, Jr. (Mr. Hamilton) out of the intensive care unit on September 24, 2006. She further alleged that on January 2, 2007, Dr. Negi disregarded orders from Mr. Hamilton's family that she was

not to treat him (Doc. 1, p.14-16; Doc. 26, p. 8-10). Hamilton also contends Watkins and Reed engaged in a civil conspiracy to cover up Dr. Negi's actions and allow for the violation of constitutional rights.

During the course of the proceedings, some confusion existed as to what claims Hamilton sought to assert and whether any claims were abandoned. During the May 3, 2012 conference, it was made clear that Hamilton was asserting both medical malpractice claims under the Federal Tort Claims Act ("FTCA") and a <u>Bivens</u>[1] claim for violations of constitutional rights. On June 5, 2012, the defendants filed the instant motion seeking dismissal of the FTCA claims for failure to exhaust and the <u>Bivens</u> claims as barred by the statute of limitations (Doc. 87).[2]

Medical Malpractice

Medical malpractice claims against the United States fall under the Federal Tort Claims Act. 28 U.S.C. §2671, *et seq*. Under the FTCA, a claimant must give notice to the proper Federal agency before he can file suit for injury or loss of property or personal injury or death caused by the negligent or wrongful act or omission

---

[1] <u>Bivens v. Six Unknown Federal Narcotics Agents</u>, 40. U.S. 388 (1971).

[2] Defendants filed a motion to dismiss on March 14, 2012 seeking to dismiss the FTCA claims (Doc 68). That motion is currently before the district judge for consideration but it is worth noting that the content of that motion is identical to that set forth in the FTCA portion of the motion currently before me for report and recommendation.

of any employee of the Government while acting within the scope of his office or employment. Defendants argue in their motion to dismiss that any medical malpractice claim must be dismissed as Hamilton failed to exhaust her administrative remedies under the FTCA.

Hamilton does not contend that she ever exhausted her administrative remedies. Rather, she contends that her son's filing of an administrative tort claim was enough to constitute exhaustion on her behalf. In support, she relies upon the power of attorney which she signed giving her son, Floyd Hamilton III[3], the right to institute legal and administrative proceedings on her behalf.

There is no doubt that Hamilton's son filed an administrative grievance on behalf of his father regarding the alleged negligent acts of Dr. Negi which occurred on September 24, 2006 (Doc. 87-3, p. 3-6). The grievance was made on April 14, 2008 and was received by the Department of Veterans Affairs on April 17, 2008 (Doc. 87-3, p.7). On November 18, 2008, the administrative remedy was denied (Doc. 87-3, p. 14-15).

The administrative remedy filed by Hamilton's son states that it is filed by him as the representative for his father. It does

---

[3] See <u>Hamilton v. Negi</u>, Civil Action No. 09-00860 (West. Dist. La.).

not state that it is filed by or on behalf of his mother.[4] As there is no evidence that she herself filed a claim and there is no evidence that the claim her son filed was on her behalf, Hamilton has failed to exhaust her administrative remedies under the FTCA and her claim is barred.

Even if Hamilton's son's administrative remedy could be considered to have been made on her behalf, the statute of limitations on her claims ran prior to the filing of her lawsuit. The time for commencing an action against the United States in a FTCA claim is set forth in 28 U.S.C. §2401(b). It states:

> A tort claim against the United States **shall be forever barred** unless it is presented in writing to the appropriate Federal agency within two years after such claim accrues or **unless action is begun within six months after the date of mailing, be certified or registered mail, of notice of final denial of the claim by the agency to which it was presented.**

(Emphasis supplied).

The denial of the administrative claim was sent by certified mail on November 18, 2008. Hamilton had six months to file her action from that date, yet she waited until April 20, 2010 to file her lawsuit. Though her son filed his lawsuit May 26, 2009, that complaint made no mention of Hamilton as a plaintiff or that claims were being asserted on her behalf. Accordingly, the tort claims

---

[4] The only reference to Hamilton is in a single sentence which reads: "Mr. Hamilton, III has been consumed with the care of his mother, following the medical care of his father and seeking justice." (Doc. 87-3, p. 4).

are untimely and barred by the statute of limitations. Though the result is harsh, the court's hands are tied. When the technical requirements of the FTCA are not followed, the court is without jurisdiction to entertain claims, even for those claims which are meritorious.

Bivens

Hamilton alleges that Mr. Hamilton was physically injured as a result of deliberate mistreatment by Dr. Negi. Her Bivens claim is characterized as one for violation of the right to be free of state-occasioned damage to a person's bodily integrity under the Fifth Amendment. Doe v. Taylor Independent Sch. Dist, 15 F.3d 443 (5th Cir. 1994); DeShaney v. Winnebago County Dept. of Social Services, 489 U.S. 189 (1989).

Bivens actions are governed by Louisiana's one year prescriptive period. La.C.C. art 3492; Wilson v. Garcia, 471 U.S. 261 (1985); McGregor v. LSU Bd. of Supervisors, 3 F.3d 850, 864 (5th Cir. 1993, cert. den., 510 U.S. 1131 (1994); Gaspard v. U.S., 716 F2d 1097, 1102 (5th Cir. 1983), cert. den., 466 U.S. 975 (1984). This prescriptive period commences to run from the date injuries or damages are sustained, Washington v. Breaux, 782 F.2d 553, 554 (5th Cir. 1986). The general rule is that prescription does not begin to run until the plaintiff has a reasonable basis to pursue a claim against a specific defendant. Ducre v. Mine Safety Appliances, 963 F.3d 767, 761 (5th Cir. 1992).

5

Hamilton's allegations make it clear that she knew Mr. Hamilton was physically harmed by Dr. Negi on September 24, 2006 and January 2, 2007. Accordingly, Mr. Hamilton's <u>Bivens</u> claim began no later than on January 2, 2007 and he had until January 2, 2008 to file his lawsuit. However, neither Hamilton nor her husband filed the claim during that time.

Hamilton further contends the continuing tort doctrine applies to this case and tolls the prescriptive period until the date of Mr. Hamilton's death. In order to allege a continuing tort, a plaintiff must allege both a continuous action and continuous damage. <u>South Central Bell Tel. Co. v. Texaco, Inc.</u>, 418 So.2d 531, 533 (La. 1982). "[T]he cause of action is not complete and does not accrue until the tortious acts have ceased." <u>Gen. Universal Sys., Inc. v. HAL, Inc.</u>, 500 F.3d 444, 451 (5th Cir. 2007). The Louisiana Supreme Court has defined a continuous tort as "one 'where the operating cause of injury is occasioned by unlawful acts, not the continuation of the ill effects of an original wrongful act.'" <u>Miller v. Conagra, Inc.</u>, 991 So.2d 445, 456 (La. 2008)(quoting <u>Crimp v. Sabine River Auth.</u>, 737 So.2d 720, 726 (La. 1999).

Hamilton simply asserts Mr. Hamilton's death was a result of Dr. Negi's deliberate mistreatment. However, she fails to allege or prove that Mr. Hamilton was seen, touched or treated by Dr. Negi after June 2, 2007 or that the cause of death was occasioned by Dr.

Negi's acts on either September 24, 2006 or January 2, 2007. Accordingly, there is no evidence of a continuing tort and the Bivens claim prescribed January 2, 2008.

Finally, Hamilton appears to argues that her claim need not be filed during the one year prescriptive period as it is a survival action. Thus, she had a year from the date of Mr. Hamilton's death to bring the Bivens claim.[5] This assertion is incorrect. Though a Bivens claim may be brought via a survival action, to do so, the decedent must have a viable cause of action on the date of his death. Carlson v. Green, 446 U.S. 14, 24 (1980)(Citation omitted); Taylor v. Giddens, 618 So.2d 834, 840-41 (La. 1993). As set forth above, the Bivens claim expired more than a year before Mr. Hamilton's death. Thus, there was no viable claim upon which to base a survival action; thus, the unfortunate result is that Hamilton's Bivens claims should be dismissed with prejudice.

Watkins and Reed

Hamilton is proceeding *in forma pauperis* ("IFP") and pursuant to 28 U.S.C. §1915(e)(2)(B), a case by one proceeding IFP shall be dismissed at any time if:

(B) the action or appeal-

    (I) is frivolous or malicious;

    (ii) fails to state a claim on which relief may be granted; or

---

[5] Mr. Hamilton died May 20, 2009 and Hamilton filed suit April 20, 2010.

> (iii) seeks monetary relief against a defendant
> who is immune from such relief.

Hamilton contends Watkins and Reed engaged in a civil conspiracy to cover up Dr. Negi's constitutional violations against Mr. Hamilton. To set forth a cognizable conspiracy claim under §1983, Hamilton must "establish the existence of a conspiracy and a deprivation of civil rights in furtherance of the conspiracy." Thompson v. Johnson, 348 Fed.Appx. 919, 922-23 (5th Cir. 2009)(internal citations omitted).[6] A blanket assertion is set forth in Hamilton's complaint that Watkins and Reed conspired to cover up Dr. Negi's constitutional violations but no specific allegations are set forth with respect to how they were involved in a conspiracy to violate Mr. Hamilton's constitutional rights.

The only evidence arguably pertaining to Watkins and Reed's involvement with Mr. Hamilton's care are two letters, one by Reed and one by Watkins which are dated more than a year apart. The letter by Reed to Floyd Hamilton III dated March 13, 2007 addresses concerns expressed by Floyd Hamilton III regarding the treatment of his father (Doc. 1-2, p. 16). In the letter, Reed states he reviewed the care provided to Mr. Hamilton and that his care was appropriate. The second letter was written on September 5, 2008 by Watkins and was sent to Congressman Rodney Alexander who was

---

[6] Section 1983 cases and Bivens cases are analogous. The distinction between the two is that under §1983 the claims are asserted for violations by state officials and Bivens claims are asserted for violations by federal officials.

inquiring about the overall care being provided to veterans by the Alexandria VA Medical Center (Doc. 1-2, p. 21). The portion of the letter underlined by Hamilton states: "[t]he Alexandria VA Medical Center is not aware of any requests made for independent review of medical treatment that deceased veterans received[d]."(Id.). These letters do not show a conspiracy to violate Mr. Hamilton's constitutional rights. Rather, it shows that Watkins and Reed each responded to inquiries sent to them separately about the medical care provided to Mr. Hamilton and/or veterans in general. Thus, Hamilton has failed to state a claim for conspiracy and this claims should likewise be dismissed.

Though the result is harsh, the court has not choice but follow and enforce the rules of procedure set forth in the Federal rules and statutes. Accordingly,

## Conclusion

**IT IS RECOMMENDED** that the defendants' motion to dismiss (Doc. 87) be **GRANTED** and Hamilton's case be **DISMISSED WITH PREJUDICE**.

Under the provisions of 28 U.S.C. Section 636(b)(1)(C) and Rule 72(b), parties aggrieved by this recommendation have fourteen (14) days from service of this Report and Recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within fourteen (14) days after being served with a copy of any objections or response to the District Judge at the time of filing.

Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in this Report and Recommendation within fourteen (14) days following the date of its service, or within the time frame authorized by Fed.R.Civ.P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the District Court, except upon grounds of plain error. See Douglass v. United Services Automobile Association, 79 F.3d 1415 (5th Cir. 1996).

THUS DONE AND SIGNED at Alexandria, Louisiana on this ____ day of August, 2012.

_____
JAMES D. KIRK
UNITED STATES MAGISTRATE JUDGE